UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM H.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**DECISION AND ORDER**

1:21-cv-01142-EAW

## INTRODUCTION

Represented by counsel, Plaintiff William H. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as well as Plaintiff's unopposed motion for leave to amend the complaint.  (Dkt. 11; Dkt. 14; Dkt. 16).  For the reasons discussed below, Plaintiff's motion for leave to amend the complaint is granted (Dkt. 16), Plaintiff's motion for judgment on the pleadings is denied (Dkt. 11), and the Commissioner's motion for judgment on the pleadings is granted (Dkt. 14).

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on July 9, 2015. (Dkt. 15 at 119-20, 405-12).[1]   In his applications, Plaintiff alleged disability beginning September 10, 2013. (*Id*. at 121-36, 411).  Plaintiff's applications were initially denied on November 24, 2015. (*Id*. at 121-36).  At Plaintiff's request, a hearing was originally held before administrative law judge ("ALJ") Lisa Martin on October 11, 2017. (*Id*. at 107-18). The hearing was adjourned so that Plaintiff could obtain a representative (*id.* at 110), and on September 6, 2018, Plaintiff appeared before ALJ JuanCarlos Hunt. (*Id*. at 76-06).  On September 13, 2018, Plaintiff amended the alleged onset date to May 29, 2017, and withdrew the request for a hearing related to his DIB application. (*Id*. at 509-10).

On September 25, 2018, the ALJ issued a fully favorable decision related to Plaintiff's SSI claim finding him disabled as of the amended onset disability date of May 29, 2017, and dismissed Plaintiff's DIB claim. (*Id.* at 142-45).  Plaintiff requested review of the decision by the Appeals Council, which the Council granted on March 27, 2020, vacating the September 25, 2018, decision and remanding the matter for further proceedings to evaluate, among other things, Plaintiff's request to amend the alleged onset date and his understanding of the consequences of his withdrawal of the DIB claim. (*Id*. at 149-53).

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

On October 27, 2020, Plaintiff appeared before ALJ Paul Georger.  (*Id*. at 46-74). On December 1, 2020, the ALJ issued a partially favorable decision regarding both of Plaintiff's claims.  (*Id*. at 17-28).  Plaintiff then requested review by the Appeals Council, which the Council denied on August 10, 2021, making the ALJ's determination the final decision of the Commissioner.  (*Id*. at 6-12).

Plaintiff commenced the instant action on October 20, 2021.  (Dkt. 1).  On April 28, 2023, following the submission of his legal brief in support of his position, Plaintiff filed a motion for leave to amend the complaint so that it complied with the requirements of Rule 2 of the Supplemental Rules for Social Security Actions.  (Dkt. 16).  The Commissioner did not object to the relief requested.  (Dkt. 19).  The amended complaint does not substantively change any of the analysis herein, and therefore the motion is granted and the Court construes the proposed amended complaint attached to Plaintiff's motion for leave to amend (*see* Dkt. 16 at 2-4) as the operative pleading.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[2] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

---

[2]   Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. (Dkt. 15 at 20). He

also determined that Plaintiff had not engaged in substantial gainful work activity since September 10, 2013, the alleged onset date.[3]  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: cardiovascular disease, status-post angioplasty and aortogram, degenerative disc disease of the lumbar spine, peripheral vascular disease (PVD), atherosclerosis, and abdominal aortic aneurysm.  (*Id.*).  The ALJ also determined that Plaintiff's hyperlipidemia and bilateral hip pain were non-severe impairments.  (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 20-21).  Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, occasionally operate a motor vehicle, work at unprotected heights and around moving mechanical parts, and must have a sit/stand option allowing him to change positions every fifteen minutes  (*Id.* at 21).

At step four, the ALJ found that Plaintiff had been unable to perform any past relevant work since the alleged onset date.  (*Id.* at 26).  The ALJ also determined that Plaintiff's age category changed to an individual of advanced age on May 29, 2017.  (*Id.*). Considering Plaintiff's age, education, and work experience prior to May 29, 2017, the

---

[3]     Even though Plaintiff amended his alleged onset date and voluntarily withdrew his DIB claim in 2018 (*id.* at 509-10), the matter was remanded by the Appeals Council in 2020, and upon remand, Plaintiff's DIB claim and the original alleged disability onset date of September 10, 2013, were reinstated.  (*Id.* at 56).

ALJ found that there were jobs that existed in significant numbers in the national economy, such as ticket taker, ticket seller, and order caller, that Plaintiff could perform.  (*Id*. at 27). The ALJ further determined that beginning on May 29, 2017, there were no jobs in the national economy that Plaintiff could perform.  As a result, the ALJ concluded that Plaintiff was not disabled prior to May 29, 2017, but became disabled on that day and continued to be disabled through the date of the ALJ's decision.  (*Id*. at 28).

## II.     The ALJ Determination is Free From Legal Error

Plaintiff asks this Court to remand this matter solely for calculation of benefits because the ALJ erred in: (1) evaluating the opinion of his treating vascular surgeon Michael Mitchell, M.D. ("Dr. Mitchell") and determining that Plaintiff's PVD did not meet or equal Listings 4.11 and 4.12; and (2) failing to consider his subjective complaints of pain and pain medication he was prescribed to treat his disc impairment in his analysis. (Dkt. 11 at 7-12; Dkt. 17 at 2-5).  For the reasons discussed below, the Court finds Plaintiff's arguments without merit.

### (A)     Listings 4.11 and 4.12

At step three of the sequential analysis, the ALJ must decide whether a claimant's impairments meet or equal in severity and duration the impairments listed in Appendix 1 to subpart P of part 404 of the regulations.  *See* 20 C.F.R. § 416.920(a)(4)(iii).  It is the claimant who bears the burden of demonstrating that his impairment meets or medically equals a certain listing.  *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009) ("Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing.").  To match

an impairment in the listing, the claimant must demonstrate that his impairment meets all of the specified criteria of that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (emphasis in original)); *see also* 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) *meets* the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." (emphasis in original)). When the impairment does not meet the criteria of a listing, it can *medically equal* in severity and duration the criteria of a listed impairment. *See* 20 C.F.R. §§ 416.925(c)(5), 416.926(a).

In determining whether a claimant's impairment or a combination of impairments meets or medically equals one of the listings, an ALJ must provide a specific rationale in support of his conclusions in step three of the sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (failure to provide an express rationale in step three of the analysis requires remand when a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ"). However, the ALJ's failure to expressly articulate his conclusions about why an impairment does not meet or medically equal one of the listings may be upheld if the court can find support for the ALJ's conclusions in the other portions of the ALJ's decision. *Id*. at 468 ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him

indicate that his conclusion was supported by substantial evidence."); *see also Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) ("Although the ALJ did not explicitly discuss Listing 11.14, his general conclusion (that Solis did not meet a listed impairment) is supported by substantial evidence.").

Here, the Commissioner concedes that the ALJ did not explicitly discuss the reasons why Plaintiff's PVD did not satisfy Listings 4.11 and 4.12. (Dkt. 14-1 at 7). Indeed, aside from stating that the evidence related to Plaintiff's PVD did not contain the diagnostic test findings and/or severity of symptoms required under either of the Listings, the ALJ's analysis did not contain a discussion of the medical criteria, or an application of the evidence related to Plaintiff's PVD to the specific criteria of each Listing. (Dkt. 15 at 20-21). The Court, nevertheless, finds that the ALJ's error was harmless.

As a general matter, the regulations describe PVD as an impairment that affects either the arteries (peripheral arterial disease (PAD)) or the veins (venous insufficiency) in the extremities, particularly the lower extremities, that is assessed on "symptoms together with physical findings, Doppler studies, other appropriate non-invasive studies, or angiographic findings." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 4.00G1 and 2.

To satisfy the criteria of Listing 4.11, a claimant must present evidence that he suffered from chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system, and one of the following: (A) extensive brawny edema involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip, or (B) superficial varicosities, stasis

dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least three months of prescribed treatment. *Id*. § 4.11.

The Court finds that Plaintiff has not demonstrated that his PVD met or medically equaled Listing 4.11. First, Plaintiff has not shown that he met the introductory paragraph of the Listing because the record does not contain any evidence that he has ever been diagnosed with chronic venous insufficiency of his lower extremities by any of his treating or examining sources. Second, Plaintiff has not met the specific criteria of the Listing and has not demonstrated that during the relevant period he had an extensive brawny edema, or varicosities, dermatitis, and ulceration that had not healed for three months. Instead, the record demonstrates that Plaintiff's vascular surgeon Dr. Mitchell, as well as his primary treating physician Indra Tambar, M.D. ("Dr. Tambar"), routinely noted during their examinations that Plaintiff did not have an edema or discoloration of his lower limbs, venous insufficiency, or varicosity in his legs, and never observed Plaintiff have statis dermatitis or ulceration of his lower extremities. (Dkt. 15 at 566, 574, 604, 608, 621, 630, 1105, 1120, 1122, 1125, 1140, 1145, 1156, 1160, 1166, 1170). Accordingly, the ALJ's determination that Plaintiff's PVD did not lead to the clinical examination findings required under Listing 4.11 was supported by substantial evidence.

To satisfy Listing 4.12, a claimant must demonstrate the existence of PAD, as determined by appropriate medically acceptable imaging, causing intermittent claudication and one of the following:

A. Resting ankle/brachial systolic blood pressure ratio of less than 0.50, or

B.  Decrease in systolic blood pressure at the ankle on exercise of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level, or

C.  Resting toe systolic pressure of less than 30 mm Hg, or

D.  Resting toe/brachial systolic blood pressure ratio of less than 0.40.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.12.

There is no dispute that Plaintiff has been suffering from PVD, an umbrella impairment encompassing PAD or venous insufficiency, which the ALJ found to be severe, and that it caused Plaintiff an intermittent claudication.[4]   Specifically, the record demonstrates that in March of 2015, Plaintiff was evaluated for PVD after he was having bilateral leg pain after walking.  (Dkt. 15 at 558, 562).  High resolution imaging and color Doppler analysis of the arteries revealed mild to moderate plaque without focal occlusion or demonstration of high-grade stenosis in his arteries, but no evidence of deep venous thrombosis.  (*Id*. at 562, 564).  Plaintiff was referred for treatment to Dr. Mitchell, who in July 2015 assessed him with atherosclerosis with intermittent claudication and bilateral lower extremity critical limb ischemia with life altering claudication.[5]  (*Id*. at 566).  An ultrasound examination of Plaintiff's carotid arteries performed on July 16, 2015,

---

[4]    Intermittent claudication is a symptom of a disease, most often PAD, that is associated with intermittent muscle pain caused by too little blood flow to muscles.  *See Claudication*,   Mayo   Clinic*,*   https://www.mayoclinic.org/diseases-conditions/claudication/symptoms-causes/syc-20370952 (last viewed on May 21, 2023).

[5]    Critical limb ischemia is a severe state of PAD.  *See Critical Limb Ischemia*, Cleveland   Clinic,   https://my.clevelandclinic.org/health/diseases/23120-critical-limb-ischemia (last viewed on May 21, 2023).

confirmed that he had minimal atherosclerotic plaques within the common carotid arteries, and normal flow of the vertebral arteries with no hemodynamically significant stenosis. (*Id.* at 1094).   A magnetic resonance angiography of Plaintiff's legs performed the following day revealed atherosclerotic changes involving the distal aortic bifurcation extending into the bilateral common iliac arteries with areas of severe stenosis of the proximal 2.5 cm of the left iliac artery of up to approximately 90 percent and severe stenosis of 80-90% spanning an area of nearly 1.0 cm of the right iliac artery.  (*Id.* at 568, 1090).  As a result of the "critical lesions in both common iliac arteries" found upon the examinations, Dr. Mitchell recommended that Plaintiff undergo a bilateral iliac artery angioplasty/stenting surgery, which took place in September 2015.  (*Id.* at 602, 607).

Aside from demonstrating the existence of PAD with intermittent claudication, to satisfy Listing 4.12, a claimant is also required to demonstrate that the impairment satisfied one of the four specific criteria identified by the Listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.12.  Even though Plaintiff has satisfied the requirements of the introductory paragraph of Listing 4.12, he has failed to demonstrate that his PAD met or medically equaled any of the four specific criteria of the Listing.  Specifically, there is no evidence that Plaintiff's resting ankle/brachial systolic blood pressure ratio has ever been less than 0.50 during his treatment.  Additionally, the record reveals that at the time Dr. Mitchell started treatment and until Plaintiff underwent a bilateral iliac artery angioplasty/stenting surgery in September 2015, his bilateral ankle/brachial index was 0.60.  (Dkt. 15 at 589, 602, 685, 1088, 1096).  The regulations indicate that if a claimant's ankle/brachial systolic blood pressure ratio is 0.50 or above, the severity of the impairment would be evaluated

- 12 -

under Listing 4.12B, unless a claimant has a disease causing abnormal arterial calcification or small vessel disease, such as diabetes mellitus. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00G7b. Here, the record does not demonstrate that Plaintiff has ever been diagnosed with arterial calcification or small vessel disease, such as diabetes mellitus; therefore, to satisfy Listing 4.12B, he had to demonstrate a "decrease in systolic blood pressure at the ankle on exercise of 50 percent or more of pre-exercise level requiring 10 minutes or more to return to pre-exercise level" measured by an exercise Doppler test.[6] *Id*. §§ 4.00C3c, 4.12B. The record does not demonstrate that an exercise Doppler test has ever been conducted during pendency of Plaintiff's claims.

Plaintiff does not argue otherwise, but submits that it was the ALJ who was required to order the test on his behalf. (Dkt. 11 at 8-11; Dkt. 17 at 2-5). Although there are circumstances when the Commissioner can request an exercise Doppler test on behalf of a claimant, Plaintiff's argument is misplaced. Listing 4.00G5 explains that if the Commissioner needs additional evidence of a claimant's PAD, it "will generally purchase exercise Doppler studies when [the claimant's] resting ankle/brachial systolic blood pressure is at least 0.50 but less than 0.80." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00G5. Here, the record reveals that Plaintiff's bilateral ankle/brachial indexes were 0.6 until he underwent a bilateral iliac artery angioplasty/stenting surgery in September 2015.

---

[6]     An exercise Doppler test is a test used for evaluation of one's PVD, during which a claimant "walk[s] on a treadmill, usually for a specified period of time, and the individual who administers the test measures the effect of exercise on the flow of blood in [the claimant's] legs, usually by using ultrasound." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00C3c.

(Dkt. 15 at 589, 602, 685, 1088, 1096).  Shortly after the surgery, Plaintiff reported being able to walk without pain, and upon examination in October 2015, his ankle brachial indexes increased to 0.90 on the left side and to 1.00 on the right side.  (*Id*. at 603-04). During his visits with Dr. Mitchell and Dr. Tambar throughout 2016 and early 2017, Plaintiff did not report any new circulatory problems, but noted that he could walk without pain, and Dr. Mitchell observed Plaintiff's ankle brachial indexes remained at the same level they were in October 2015—0.90 and 1.00 respectively.  (*Id*. at 607-08, 611, 629, 1140, 1144-45).  Considering that, prior to the date he was found disabled as of May 29, 2017, the only time Plaintiff's ankle brachial indexes were below 0.80 was before his 2015 angioplasty surgery, and in light of the increase of his indexes above 0.80 following the surgery, the Court does not find that the ALJ was required to order an exercise Doppler test to determine whether Plaintiff's PVD satisfied Listing 4.12B.

As to Listings 4.12C and 4.12D, the record does not demonstrate that Plaintiff has ever been diagnosed with arterial calcification or small vessel disease, such as diabetes mellitus.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00G7c ("We will use resting toe systolic blood pressures or resting toe/brachial systolic blood pressure ratios . . . when you have intermittent claudication and a disease that results in abnormal arterial calcification (for example, Monckeberg's sclerosis or diabetes mellitus) or small vessel disease (for example, diabetes mellitus).").  Since the record does not contain evidence related to Plaintiff's resting toe blood pressure, the Court finds that he has not met his burden to demonstrate that his PAD met or medically equaled either Listings.

Plaintiff also argues that the ALJ erred in not only determining that his PVD met Listing 4.12, but also in finding that the impairment medically equaled in severity to the Listing. (Dkt. 17 at 3-4). Plaintiff's argument is without merit. Indeed, an impairment can be found medically equivalent to a listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria of the listing. *See* 20 C.F.R. § 416.926(b)(ii). In support of his argument, Plaintiff relies on treatment records of Dr. Mitchell issued over a span of three years, most of which post-date May 29, 2017—the date he was found disabled.[7] (Dkt. 11 at 9-11; Dkt. 17 at 3-4). Although Plaintiff had significant circulatory issues in 2015, they were resolved by an angioplasty/stenting surgery performed by Dr. Mitchell in September 2015, which improved his ankle brachial blood pressure and relieved Plaintiff of leg pain. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (the ALJ properly considered treatment notes indicating symptom improvement with treatment in denying disability application). Plaintiff did not complain about having intermittent pain in his legs and hips until May 22, 2017—a week before he was found disabled—when he first reported having pain to Dr. Tambar, even though he did not complain about having any such pain during his subsequent visits that year. (Dkt. 15 at 632, 635, 638, 642). Moreover, a nuclear

---

[7]     Dr. Mitchell's treatment records contain notations stating that Plaintiff could no longer work. (*See*, *e.g.*, Dkt. 15 at 565). The ALJ afforded them little weight because they spoke to the ultimate issue of disability reserved to the Commissioner. (*Id*. at 26). The notations appear to reflect Plaintiff's subjective complaints and not the doctor's opinion regarding Plaintiff's functioning. However, to the extent they do represent the physician's opinion about Plaintiff's ability to work, the Court finds that the ALJ properly assessed their weight.

medicine stress test performed in October 2017 did not reveal any evidence of myocardial ischemia, and Plaintiff's wall motion abnormality and left ventricle ejection fraction were normal.  (*Id.* at 1164).  It was not until January 2018 when an ultrasound revealed mild plaque in Plaintiff's arteries with abnormal and monophasic waveform, and not until March 2018 when Dr. Mitchell suspected stent restenosis of Plaintiff's arteries and observed his ankle brachial indexes reduce to 0.70.  (*Id.* at 1139-40, 1042-43, 1145).  Plaintiff underwent a bilateral iliac artery angioplasty/stenting surgery for the second time in June 2018, which improved his ankle brachial index to 0.90 on the left side and to 0.80 on the right side.  (*Id.* at 1159-60).  Although these records speak to the severity of Plaintiff's PVD, they relate to the period after Plaintiff had been found disabled, and, if anything, provide support for the ALJ's disability determination after May 29, 2017.

On these facts, the ALJ's error in not explicitly discussing Listings 4.11 and 4.12 in step three of his analysis was harmless because his examination of the evidence in the subsequent steps provides sufficient support for his determination that Plaintiff's PVD did not meet or medically equal either Listing.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) ("[A]lthough the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.") (citation omitted).  As such, the Court finds remand on this ground is unwarranted.

(B)    The ALJ's Determination is Supported by Substantial Evidence

Plaintiff's second point of contention is that the ALJ did not properly consider his allegations of pain related to the back impairment and the pain medication he was taking as a result of the impairment. (Dkt. 11 at 11-12). The Court finds this argument unavailing. It has been well recognized that a claimant's statements alone are insufficient to establish disability, unless they are supported by objective medical evidence. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (internal citations omitted)).

In assessing claimant's subjective complaints, the regulations require an ALJ to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms. *Id.* (internal citations omitted). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* Here, the ALJ applied the two-step inquiry and determined that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his PVD and back impairment were not supported by the record and were inconsistent with the full range of daily activities, including riding a

bike, splitting wood, shoveling snow, and doing everything but childcare that Plaintiff performed during the relevant period.  (Dkt. 15 at 23, 25).  *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (the ALJ properly did not credit plaintiff's subjective complaints of limiting effects of his impairments when his testimony was not supported by the objective medical evidence and daily activities); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (the ALJ accepted plaintiff's subjective allegations of pain as a factor in accessing RFC while limiting plaintiff to light work and restricting heavy work because substantial evidence supported the ALJ's determination that plaintiff's pain was insufficient to preclude light work).  Although the ALJ recognized Plaintiff's back impairment, he also determined that Plaintiff's examinations related to the impairment were minimal and yielded limited treatment for his degenerative disc disease.  (Dkt. 15 at 25).  Indeed, diagnostic testing performed in early 2015 demonstrated mild concave right scoliosis and marginal degenerative spurring without fracture, malalignment, or central stenosis.  (*Id.* at 534).  Plaintiff's course of treatment for his back was conservative and consisted of only medication management without any physical therapy, surgery, or treatment by practitioners such as chiropractors or physical therapists.  (*Id.* at 59).  *See, e.g.*, *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) ("the regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment"); *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms).  Indeed, Plaintiff was referred to a pain management specialist Gauram Aurora,

M.D. ("Dr. Aurora"), who treated him since 2015 by prescribing pain medications which Plaintiff took "as needed" even though he was getting the refills every month. (Dkt. 15 at 632, 878). Although he reported aching and throbbing pain in his back that was activated by activity, Plaintiff also indicated that the medication relieved his pain by greater than 90%. (*Id.* at 652, 655-56, 842-84). His physical examinations were generally nonremarkable when he demonstrated full strength in his upper and lower extremities and only limited abnormalities related to a decreased range of motion in his lumbar back. (*Id.*). Diagnostic imaging of Plaintiff's lumbar back and hips performed in May 2017, days before the ALJ found him disabled, demonstrated mild osteoarthritis and disc disease in his lumbar back, while no acute bony abnormality was identified. (*Id.* at 1076, 1079).

In addition to evaluating the objective findings related to Plaintiff's back impairment, the ALJ also considered the opinion of an orthopedic surgeon Donald J. Nenno, II, M.D. ("Dr. Nenno"), whose assessment was consistent with the minimal findings pertaining to Plaintiff's back impairment that did not support Plaintiff's subjective complaints. (*Id.* at 25, 549). Even though the ALJ afforded Dr. Nenno's opinion little weight, such finding was justified because Dr. Nenno's statement regarding Plaintiff's "minimal disability" was a statement on an issue that is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). The opinion of consultative examiner John Schwab, D.O. ("Dr. Schwab") also provided support for the ALJ's conclusion that Plaintiff's subjective complaints of disabling pain were inconsistent with the record. Specifically, during his examination, Dr. Schwab observed Plaintiff having full flexion, extension, lateral flexion bilaterally in his cervical and lumbar spine, no scoliosis, kyphosis, or abnormality in his

thoracic spine, as well as full range of motion in shoulders, elbows, forearms, wrists, hips, knees, and right ankle, and a reduced range of motion in his left ankle.  (Dkt. 15 at 552). The only limitation that Dr. Schwab assessed Plaintiff with was a mild restriction in walking upstairs and using ladders.  (*Id*. at 553).  Even though the ALJ afforded patrial weight to this assessment because it did not reflect the severity of Plaintiff's impairments, Dr. Schwab's findings were consistent with a record of minimal findings related to Plaintiff's back impairment.  *See Valdes-Osacio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at * 2 (2d Cir. May 22, 2023) (the ALJ's decision to give only moderate weight to the opinion of an examining expert because it was vague as to plaintiff's specific limitations was not erroneous).

Therefore, even though the ALJ afforded partial or little weight to the consultative opinions of record, his ultimate RFC determination was not inconsistent with the findings of the consultative examiners or Plaintiff's treating sources.  Moreover, despite the lack of significant restrictions in Plaintiff's functioning that they have identified, it is apparent that the ALJ arrived at a more restrictive RFC as a result of his reliance on Plaintiff's hearing testimony that he could lift ten pounds and sit for fifteen minutes before getting up to stretch his legs, as well as Plaintiff's abilities to perform various daily activities that were consistent with light work.  *See, e.g*., *Schillo v Kijakazi*, 31 F.4th 64, 78 ("[An] ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."); *Ramsey v. Comm'r of Soc. Sec*., 830 F. App'x 37, 39 (2d Cir. 2020) (upholding the ALJ's RFC determination when the ALJ deviated from the consultative examiners' recommendations to decrease plaintiff's RFC based on other

evidence in the record); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (the ALJ properly relied on plaintiff's "Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work.").

In sum, Plaintiff's challenges to the ALJ's determination amount to a disagreement with the ALJ's findings.  The Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Genier,* 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)).  It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  Plaintiff presented no medical evidence of functional limitations greater than those found by the ALJ.  For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet his burden of a more restrictive RFC.  As a result, the RFC determination is supported by substantial evidence.  Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the complaint is granted (Dkt. 16), Plaintiff's motion for judgment on the pleadings is denied (Dkt. 11), and

the Commissioner's motion for judgment on the pleadings is granted (Dkt. 14).  The Clerk

of Court is directed to enter judgment and close this case.

      SO ORDERED.

                                     ELIZABETH A. WOLFORD
                                     Chief Judge
                                     United States District Court

Dated:       July 11, 2023
               Rochester, New York